UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GRACIELA BAYLON GONZALES,                                              PLAINTIFF

V.                                                          CIVIL NO. 3:20-CV-536-TSL-RPM

OVERNIGHT PARTS ALLIANCE, LLC,
ET AL.,                                                                DEFENDANTS

## REPORT AND RECOMMENDATIONS

### I.   Introduction

Before the Court is plaintiff Amy Lugo's ("Lugo's") second motion to enforce the settlement. Doc. [118]. In this motion, Lugo seeks for the Court to omit three provisions from the proposed formal agreement ("PFA") in order for it to conform with the existing settlement agreement reached at the settlement conference ("SA"). *Ibid.* She also moves for sanctions. *Ibid.* This motion is opposed. Doc. [147].

### II.   Relevant Background

On June 3, 2019, a head-on collision between a truck and van on State Highway 16 in Kemper County, MS resulted in the death of Jose Francisco Lugo ("decedent") and seven other van passengers. *Ibid.* Following these events, Lugo sued truck driver Steven McKinney, Overnight Parts Alliance, LLC, and Wholesale Parts Alliance, LLC (collectively, "defendants") on behalf of the decedent.[1] Others with similar causes of action also filed suit. On July 22, 2021, the Court consolidated these cases into *Gonzales, et al. v. Overnight Parts Alliance, LLC, et al.*, No. 3:20–CV–536–TSL–RPM (S.D. Miss. Aug. 17, 2020) because each arose from a common question of law or fact. Doc. [23]. On September 8, 2021, intervenor Bridgefield Casualty Insurance Company

---

[1] Penske Truck Leasing Co., L.P. was originally named as a defendant but later dismissed from the case.

("Bridgefield") was joined. Following a two-day settlement conference, this case settled on February 1, 2022. On that same date, the SA was placed on the record. The parties agreed that the SA contained all material terms and that those terms were neither vague nor ambiguous. Doc. [149]. Thereafter, all parties agreed to the SA. *Ibid.* This motion followed. Doc. [118].

### III.   Analysis

#### A.   Generally

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449–50 (5th Cir. 1994) (citations omitted). A settlement agreement, once entered into, cannot be repudiated by any party, *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984), and "a district court may summarily enforce a settlement agreement if no material facts are in dispute[,]" *In re Deepwater Horizon*, 786 F.3d 344, 355 (5th Cir. 2015). Finally, "[a] district court may exercise its discretion to enforce a settlement agreement where one party has agreed to a settlement but later refuses to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Texas*, No. CIV.A. 3:09–CV–1124G, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010) (citing *Daftary v. Metropolitan Life Insurance Company*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. 1998) (per curiam)).

#### B.   Choice of Law

"A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement." *Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 266 (5th Cir. 1995)). Since Mississippi is the forum state, the Court applies the "center of gravity" test. *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 959–60 (Miss.

1999). In this case, the parties negotiated and agreed to all materials terms in Jackson, MS. Doc. [149]. Likewise, the settlement agreement arises from events occurring within Mississippi. *Ibid.* As a result, Mississippi contract law applies to the "validity and enforceability" of the settlement agreement. *Deepwater Horizon*, 786 F.3d at 354.

### C.  Disputed SA Indemnity Provision

Under Mississippi law, "[s]ettlement agreements 'are contracts, made by the parties,' which will be enforced by the law." *Crowley v. Germany*, 268 So.3d 1277, 1278–79 (Miss. 2018) (quotation omitted). A valid settlement contract "consists of an offer, an acceptance of that offer, and consideration." *Vill. at the Beverly, LLC v. Empire Corp. of Tennessee, Inc.*, No. 2:19–CV–55–KS–MTP, 2021 WL 6882310, at *4 (S.D. Miss. Oct. 20, 2021) (quotation omitted). A settlement agreement may be reached by oral agreement, *Hastings v. Guillot*, 825 So. 2d 20, 24–25 (Miss. 2002), only requires agreement to material terms, *Matter of Conservatorship of Redd v. Redd*, 332 So.3d 250, 257 (Miss. 2021), and the absence of a signed release does not preclude the existence of an agreement, *Ammons v. Cordova Floors, Inc.*, 904 So.2d 185, 190–91 (Miss. Ct. App. 2005). Finally, absent fraud, mistake, or overreach, Mississippi courts will enforce a valid settlement agreement. *Hastings*, 825 So.2d at 24–25.

First, Lugo makes the argument that the PFA indemnity agreement contradicts the SA indemnity provision. *See*, *e.g.*, Doc. [123].[2] According to Lugo, the "relative to this action"

---

[2] The corresponding PFA provision states:
> Releasor further covenants . . . that if another lawsuit is filed, or a claim is made against anyone other than the Released Parties for damages as a result of the Occurrence, or treatment of injuries arising out of the Occurrence, and if as a result of that suit or claim, claims and/or demands are made against any of the Released Parties, such Releasor will indemnify and save each of the Released Parties harmless from any and all claims, demands, actions, causes of action, damages and costs (including attorneys' fees) which any of the Released Parties incur in defense of any such claims or demands or becomes obligated to pay to anyone as a result of the Occurrence or treatment of injuries arising out of the Occurrence.
> [Doc. [149], Ex. 1.]

3

language in the SA indemnity provision limits her indemnification duties to subsequent claims or lawsuits filed in *this* lawsuit.

As it must, the Court begins with the plain language of the contractual provision and reviews it within the four corners of the entire contract. *Gaiennie v. McMillin*, 138 So.3d 131, 135 (Miss. 2014). In full, the SA indemnity provision states: "[t]he settlement agreement will contain a comprehensive indemnity agreement, including a duty to defend should any subsequent claims or lawsuits arise relative to this action." Doc. [149], at 8. To begin with, the parties do not dispute that "comprehensive indemnity agreement" means what it says. *See* Doc. [1447], at 4; [123], at 5–6.[3] Turning to the phrase "settlement agreement," it, of course, refers to the SA itself, which was only agreed to by the plaintiffs, defendants, and Bridgefield. Doc. [149], at 10–15. No language extends the protection to non-parties who are later sued. Self-evidently, the SA indemnity provision only binds, and applies to, the parties that agreed to it. Cf. Doc. [147], at 4. Next, the term "relative" means "a thing having a relation to or connection with or necessary dependence on another thing." *Relative*, Merriam–Webster Online Dictionary, https://www.merriam-webster.com/dictionary/relative (last visited June 13, 2022). *See also Conservatorship of Est. of Moor ex rel. Moor v. State*, 46 So.3d 849, 854–55 (Miss. Ct. App. 2010). In turn, the comprehensive indemnity provision only addresses future lawsuits that have a relationship to the instant lawsuit. Since "th[e] action[s]" settled in the SA are "wrongful death claims[,]" Doc. [149], at 8 (emphasis added), the indemnity provision only extends to future lawsuits that relate to these claims. Of course, the term "relative" indicates a *broader* scope of indemnity than the wrongful death claims within themselves– and extends to the facts underlying those claims. *Frazier v. Ne. Mississippi Shopping Ctr., Inc.*, 458 So.2d 1051, 1054 (Miss. 1984).

---

[3] To the contrary, Lugo merely disputes whether the indemnity agreement applies to *future* lawsuits.

4

Furthermore, Lugo's reading simply ignores the "subsequent . . . lawsuit" language. Doc. [123]. Under Lugo's reading, the SA indemnity provision states, in relevant part, that Lugo must indemnify the defendants "should any subsequent . . . lawsuits arise . . . [in this] action." Doc. [149]. Self-evidently, Lugo's "suggested interpretation of the contract language is unreasonable." *Lehman-Roberts Co. v. State Highway Comm'n of Mississippi*, 673 So.2d 742, 744 (Miss. 1996). Likewise, Lugo's reading of the SA indemnity provision conflicts with surrounding provisions. Cf. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005) ("When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses."). Most glaringly, the SA later states that: "[t]here will be a dismissal of *all* wrongful death claims filed in this action *with prejudice*." Doc. [149], at 8 (emphasis added). Since the SA results in a dismissal of this lawsuit with prejudice, the SA indemnity provision would be rendered meaningless under Lugo's reading. *Facilities, Inc.*, 908 So.2d at 111.[4]

In contrast to Lugo's reading, the SA indemnity provision plainly contemplates and provides coverage in separate, future lawsuits. Second, the SA indemnity provision only requires the plaintiffs to indemnify the defendants and Bridgefield in future cases that relate to the facts underlying the wrongful death claims in this case. Third, the SA indemnity provision only protects persons who agreed to the SA. Ultimately, the plaintiffs must provide the defendants and Bridgefield with "comprehensive indemnity," and a duty to defend, in any future lawsuit filed

---

[4] Even assuming *arguendo* that the "relative to this action" language is ambiguous, *Facilities, Inc.*, 908 So.2d at 111, "[a] construction leading to an absurd, harsh or unreasonable result in a contract should be avoided . . . ." *Frazier v. Ne. Mississippi Shopping Ctr., Inc.*, 458 So.2d 1051, 1054 (Miss. 1984). Here, the parties agreed to dismiss the instant case with prejudice. In turn, if Lugo's reading of the SA indemnity provision is correct, the provision would only create a duty for her to defend against a future litigant attempting to reopen *this* case and assert new claims against the defendants. Lugo's reading defies common sense. Putting aside law school hypotheticals, a litigant would not seek to reopen this lawsuit rather than filing a new cause of action. He would have no discernible reason to do so and Lugo has not identified one. In short, "no [wo]man in h[er] right mind would have agreed to" Lugo's reading of the indemnity provision. *Frazier*, 458 So.2d at 1054.

against the defendants or Bridgefield that relates to the facts of this case. To the extent that the PFA indemnity provision conflicts with the above, it must be amended.

## D. Valid and Enforceable

In this case, the SA was read into the record. Each party, including Lugo and the defendants, agreed that the SA contained all *material* terms. Doc. [149]. All parties agreed that the terms were neither vague nor ambiguous. *Ibid.* Thereafter, all parties, including Lugo and the defendants, agreed to be bound by those same terms. *Ibid.* Some terms were favorable to the plaintiffs and other terms were favorable to the defendants. *Id.*, at 7–8. Since there has been an offer, acceptance, and consideration, the SA is valid. *See*, *e.g.*, *Redd*, 332 So.3d at 257. Likewise, the parties have not identified mistake, fraud, or overreach that renders the SA unenforceable. For these reasons, there is a valid and enforceable settlement agreement.

## E. Other Disputed Provisions

With the above resolved, the Court turns to the remaining PFA provisions in dispute. Unlike the PFA indemnity provision, these PFA provisions do not arise from the SA. By party agreement, therefore, these terms are not material. Cf. *Redd*, 332 So.3d at 257. Turning to the first immaterial provision, it states:

> 1.5 Releasor agrees that if such Releasor files a lawsuit against anyone other than the Released Parties seeking recovery for damages as a result of the Occurrence, . . . then this Settlement Agreement may be filed with the court as definitive evidence of the consent of such Releasor . . . provided, however, that unless the Releasees and the Insurers have agreed to waive any provisions of this Settlement Agreement requiring that it be kept confidential, this Settlement Agreement shall be filed only under seal or in redacted form or in such other manner as the court may specify in order to maintain its confidentiality.

[Doc. [149], Ex. 1.]

On this point, the Court declines to make a binding evidentiary ruling in a hypothetical lawsuit. After all, the Court does not issue advisory rulings. *Nguyen v. Hartford Underwriters Ins. Co.*, 514

6

F. Supp. 3d 831, 837 (M.D. La. 2021). The Court will modify the PFA to omit this provision. *Rivas v. QEP Res., Inc.*, No. MO:18–CV–136–DC, 2020 WL 13111144, at *3–*4 (W.D. Tex. June 14, 2020). Turning to the second immaterial provision, it states:

> 1.6 Releasor . . . further covenants . . . to reduce in any lawsuit arising out of the Occurrence . . . any verdict or judgment rendered in favor of such Plaintiff and against anyone other than the Released Parties by the amount of any verdict or judgment any such person or entity obtained against the Released Parties, or any one of them.
>
> [Doc. [149], Ex. 1].

This "offset" PFA provision is ostensibly designed to benefit nonparties that were not present at the settlement conference. Unsurprisingly, this "offset" PFA provision was neither addressed in nor contemplated by the SA. In fact, this PFA provision significantly departs from the existing terms of the SA. For these reasons, the "offset" PFA provision runs counter to the parties' intent and the Court will modify the PFA to omit this provision. *See*, *e.g.*, *Vira v. S&R Dev., Inc.*, No. CV 17–5858, 2018 WL 3545161, at *3 (E.D. La. June 22, 2018), *adopted*, No. CV 17–5858, 2018 WL 3533555 (E.D. La. July 23, 2018).

### F. Sanctions

Finally, the Court turns to Lugo's motion for sanctions. Lugo has been a willing participant in delaying the conclusion of these proceedings. Notably, she argued that the SA indemnity provision only requires her to indemnify the defendants for future lawsuits filed within this lawsuit. As a result, the Court declines Lugo's invitation to sanction the defendants. Doc. [123], at 14.

### **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that plaintiff Amy Lugo's [118] Motion to Enforce Settlement be denied in part and granted in part.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 8th day of July 2022.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE